NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERITAS LIFE INSURANCE CORP., | |
| Plaintiff, | Civil Action No. 21-2136-CCC-AME |
| v. | OPINION & ORDER |
| WELLS FARGO BANK, N.A., as Securities Intermediary, | |
| Defendant. | |

**ESPINOSA**, Magistrate Judge

This matter comes before the Court on the motion by defendant Wells Fargo Bank, N.A., as Securities Intermediary ("Wells Fargo") to stay this action pending resolution of an action initiated by Wells Fargo in the United States District Court for the District of Nebraska captioned *Wells Fargo Bank, N.A. as Securities Intermediary v. Ameritas Life Insurance Corp.*, Case No. 4-21-cv-3118 (the "Nebraska Action"). Plaintiff Ameritas Life Insurance Corp. ("Ameritas") opposes the motion. The Court has considered the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Court grants the motion to stay.

**I.    BACKGROUND**

This declaratory judgment action concerns the validity of a life insurance policy, alleged by Ameritas to be void from its inception under New Jersey law prohibiting "stranger-originated

1

life insurance," commonly known by the acronym "STOLI."[1] The subject policy was issued on September 8, 2008, by the corporate predecessor of Ameritas, Union Central Life Insurance Company ("Union Central"), to insure the life of Jerry Freid in the amount of $4,000,000 (the "Policy").[2] Freid, the insured life, and the Policy's initial owner and beneficiary, the Jerry Freid Irrevocable Trust (the "Trust") were both domiciled in New Jersey at the time the Policy was procured. On May 12, 2011, the Trust sold the Policy to Life Settlements International, a life settlement provider and client of defendant Wells Fargo. That same date, Wells Fargo took title to the Policy, holding it as a financial asset on its client's behalf. According to the record before the Court, Wells Fargo remains the titleholder of the Policy.[3]

On July 29, 2020, Jerry Freid died. Wells Fargo submitted a death claim under the Policy to Ameritas on or about August 17, 2020.[4] Almost six months later, by letter dated February 10, 2021, Ameritas informed Wells Fargo that it had completed a review and intended to deny the claim on the grounds that the Policy ran afoul of New Jersey's STOLI prohibition (the "February 10 letter"). Specifically, the February 10 letter stated:

> Based on our review, we have determined that the policy was procured as a stranger-originated life insurance transaction ("STOLI") which is in violation of New Jersey public policy. As such, please be advised that it is our intention to deny the claim and void the policy.

---

[1] New Jersey law defines STOLI as: "an act, practice, or arrangement to initiate or procure the issuance of a policy in [New Jersey] for the benefit of a third party investor who, at the time of policy inception, has no insurable interest under the laws of the Sate in the life of the insured." N.J.S.A. 17B:30B-18(e)(1). The law authorizes insurers to initiate civil actions to contest the validity of STOLI policies. N.J.S.A. 17B:30B-18(d); N.J.S.A. 17B:19(b).

[2] Union Central Life merged into Ameritas Life effective July 1, 2014. (Compl. ¶ 2.)

[3] The record also indicates that after its initial sale by the Trust, the Policy was thereafter transferred at least twice more to other beneficial owners. However, Wells Fargo asserts that, throughout these conveyances, it has remained the Policy's legal owner and beneficiary since acquiring title in 2011.

[4] The claim was submitted on Wells Fargo's behalf by a servicer known as Magna Servicing, which is not party to this lawsuit.

(Johnson Decl., Ex. 1, at ECF 37-2.)

However, before providing notice of its intent to deny Well Fargo's benefit claim, Ameritas had already filed this declaratory judgment action, seeking recission of the Policy as void and unenforceable from the outset. On February 9, 2021, Ameritas filed a single-count Complaint in the District of New Jersey, pleading a claim under the STOLI prohibition provision of New Jersey's Viatical Settlements Act and seeking a declaration that the Policy is "void *ab initio*" as contrary to New Jersey public policy. (Compl. ¶ 42.) The Complaint summarizes the crux of this action as follows:

> Ameritas Life is informed and believes that the Policy was procured or caused to be procured by strangers to Jerry Freid, without a valid insurable interest in his life, and that certain misrepresentations were made in the application for the Policy and otherwise during the application process regarding, among other things, the intended disposition and source of funding for the Policy, as well as the intended purpose of the Policy.

(*Id.*, ¶ 3.) In particular, the Complaint alleges Freid and the Trust applied for and took out the Policy with the intention of transferring it and that the Policy was funded with money provided by stranger investors since its inception. (*Id.* ¶¶ 6, 22-23, 26). According to the Complaint, the sale of the Policy in 2011 and related transfer of title to Wells Fargo was designed to circumvent the Policy's two-year contestability period and evade detection of the STOLI transaction. (*Id.* ¶ 27-31.) It appears Wells Fargo learned of this lawsuit in or about April 2021, as the waiver of service it executed is dated April 15, 2021.

In this motion to stay, Wells Fargo asserts that, contrary to the February 10 letter advising it that STOLI conduct was discovered in the claim investigation, Ameritas, or its predecessor Union Central, has been aware that the Policy is a STOLI policy since at least 2014. To support this contention, Wells Fargo proffers the public record of *United States v. Binday*, a federal criminal action in which James Kevin Kergil, the agent who procured the Policy, Michael

Binday, and Mark Resnik were convicted and sentenced to prison for insurance fraud crimes involving illegal STOLI conduct (the "Binday Action"). *See United States v. Binday*, 804 F.3d 558 (2d Cir. 2015) (affirming the convictions and remanding for the limited purpose of permitting the district court to enter a revised restitution order in the amount agreed upon by the parties).[5] Wells Fargo underscores that, in the Binday Action, Union Central sought and received restitution for commissions paid on the Policy, claiming it was part of the unlawful STOLI scheme at issue.[6] (Mot. at 9-10.)

Ameritas continued to collect premiums for the Policy, at least until the time of Freid's death in 2020 or submission of the death benefit claim by Wells Fargo. This fact, asserted in the motion and supported by the June 15, 2021 Declaration of LaDonna Johnson of Magna Servicing, (ECF 8-10, ¶ 14), does not appear to be in dispute.

After Wells Fargo received the February 10 letter from Ameritas and waived service of process in this action, Wells Fargo initiated its own federal lawsuit in Nebraska, Ameritas's state of incorporation, i.e., the Nebraska Action. Filed on June 14, 2021, the Nebraska Action alleges that Ameritas engaged in bad faith conduct with respect to the Policy. It asserts breach of contract, promissory estoppel, and unjust enrichment claims and seeks the following relief: to estop Ameritas from rescinding the Policy, obtain payment of the Policy's death benefit or alternatively, compel the return of premium payments, and recover damages for Ameritas's

---

[5] The action was docketed in the Southern District of New York as 12-cr-152. This Court may take judicial notice of matters of public record, including "proceedings in other courts that relate to matters at issue." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.,* 955 F. Supp. 2d 317, 325 (D.N.J. 2013).

[6] Wells Fargo points to the Government's 2014 sentencing submission in the Binday Action. That submission included the declaration of F.B.I. Special Agent Thomas McDonald, identifying the Policy as one involved in the criminal scheme and calculating the commissions paid by Union Central for the Policy, among others. (Biderman Decl., Ex. 3, ECF 29-5.)

alleged unfair trade practices in violation of Nebraska's Unfair Insurance Claims Settlement Practices Act, Neb. Rev. Stat. § 44-359 (Biderman Decl., Ex. 2, ECF 29-4.)

In a September 27, 2021 Order, the District Court presiding over the Nebraska Action took note of the "mirror-image case pending in the U.S. District Court for the District of New Jersey." (*Id.*, Ex. 7 at, ECF 29-9.) Noting that one federal court may defer to another when both are simultaneously exercising jurisdiction over the same matter, the court *sua sponte* stayed the Nebraska Action, until such time as this Court ruled on Wells Fargo's then-pending motion to dismiss this action for lack of personal jurisdiction. It observed the ruling may obviate the need to determine which of the two courts would, or should proceed; "[b]ut, should [Wells Fargo's] motion to dismiss be denied and both parties try to forge ahead in their respectively chosen fora, then this Court and the New Jersey court will need to resolve which case should take precedence, perhaps on an appropriate motion to transfer from one of the parties , or perhaps sua sponte." (*Id.* at 7.)

On January 28, 2022, the Honorable Claire C. Cecchi denied Wells Fargo's motion to dismiss this action for lack of personal jurisdiction. Wells Fargo thereafter sought and obtained an extension of the Nebraska Action stay, to remain in place pending decision on the motion to stay presently before this Court.

**II.  DISCUSSION**

Wells Fargo moves for a stay of this declaratory judgment action in favor of the parallel but later-filed Nebraska Action, arguing that the Third Circuit's first-filed rule should not apply. Before considering that rule and its exceptions, this Court notes it is axiomatic that a court inherently has broad and discretionary authority to control its docket, including the power to stay proceedings. *Bechtel Corp. v. Local 215 Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215

5

(3d Cir. 1976); *see also Landis v N. Am. Co.*, 299 U.S. 248, 254 (1936) (holding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Indeed, particularly apt to the motion before the Court, the Third Circuit has held that "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel*, 544 F.2d at 1215. Whether to exercise the power to stay calls for the Court to weigh competing interests and balance the parties' relative hardships. *Landis*, 299 U.S. at 254-55; *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1076 (3d Cir. 1983). The burden of demonstrating a stay is appropriate falls on the moving party. *See Landis*, 299 U.S. at 255.

  Here, the question of whether the Court, in its discretion, should stay this action in favor of the Nebraska Action turns on the applicability of the first-filed rule. The rule holds that, where multiple proceedings involving the same parties and same issues are before courts of concurrent federal jurisdiction, "the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). The first-filed rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.* However, the Third Circuit has held that the rule must not be applied rigidly and without consideration of other factors, including a party's bad faith, forum shopping, or other inequitable conduct, all of which it has recognized as bases for departure from the rule. *Id.* at 976. Based on similar consideration of equity, the Third Circuit further recognized that the timing and circumstances surrounding the filing of the first lawsuit are relevant to an analysis of whether the rule should apply, holding that an exception is warranted "when the first-filing party instituted a

6

suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum." *Id.* at 976-77 (citing various cases).[7]

Such a "race to the courthouse" scenario demands particular scrutiny when the first-filed case is a declaratory judgment action filed by the party that would ordinarily be the defendant in an analogous suit for coercive relief. *See, e.g., Honeywell Int'l, Inc. v. Int'l Union, United Auto., Aerospace and Agri. Implement Workers of Am.*, 502 F. App'x 201, 206 (3d Cir. 2012) (affirming order dismissing the first-filed declaratory judgment action in favor of second-filed action for coercive relief); *Amtrust at Lloyd's Ltd. v. Lee*, No. 15cv1615(KM), 2016 WL 1464650, at *5 (D.N.J. Apr. 12, 2016) (rejecting plaintiff's argument that a venue transfer to the forum preferred by the defendant would nullify the first-filed rule, reasoning that keeping the action in the District of New Jersey would be "arbitrary and technical" where the declaratory judgment action had been filed "mere hours" before a mirror-image action, in the natural plaintiff/defendant configuration); *Amtrust at Lloyd's v. Breslin*, No. 14cv7761(SRC), 2015 WL 2092669, at *2 (D.N.J. May 5, 2015) (denying motion for reconsideration of an order transferring venue to the district where the defendant had initiated his own, later-filed insurance coverage suit and observing that the "timing strongly suggests that [the insurance company's] simultaneous denial of coverage and filing of this [declaratory judgment] action, before Breslin had the opportunity to bring suit in another forum and possibly before he even knew of the coverage decision, is the kind of inequitable conduct which would weigh against deferring to [the insurance company's] choice as the first-filed forum."); *Telebrands Corp. v. martFIVE LLC*,

---

[7] Indeed, as observed by the District Court in the Nebraska Action, the Eighth Circuit has likewise identified exceptions to the rule and noted two "red flags" that may indicate the first-filed rule should not be enforced: "first, where the first suit was filed after the other party gave notice of intention to sue and, second, where the first action was for declaratory judgment rather than for damages or equitable relief." (Biderman Decl. Ex. 7 at 6, citing *Boatmen's First Nat'l Bank of Kan. City v. Kan. Public Emp. Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995)).

No. 13cv3374(JLL), 2013 WL 4675558, at *6 (D.N.J. Aug. 30, 2013) (declining to apply first-filed rule where the plaintiff had filed a declaratory judgment action in anticipation of the defendants' filing of a suit for coercive relief).

For example, in *Honeywell*, the Third Circuit reviewed and affirmed an order dismissing a declaratory judgment action filed in the District of New Jersey in favor of a second later-filed suit for related coercive relief pending in another federal district court. *Honeywell*, 502 F. App'x at 206. The Third Circuit found that the district court had, in its discretion, properly determined the declaratory judgment action presented an exception to the first-filed rule, based the nature of the second-filed action, the nexus of the second-filed suit's forum to the dispute, and the declaratory judgment plaintiff's "decision to sue before providing the required statutory notice [which] suggested that it was attempting to beat the [defendant] Union to the courthouse." *Id.* Citing the precedential decision *E.E.O.C. v. Univ. of Pa.* and persuasive authority from the Sixth and Seventh Circuits, the Third Circuit concluded that such factors had been "appropriately consider[ed] in determining whether deference to the second-filed action for coercive relief was right and equitable under the circumstances." *Id.* (quotation omitted).

Here, Wells Fargo argues that this first-filed declaratory judgment action should be stayed pending the coercive Nebraska Action, in which Wells Fargo seeks affirmative relief against the Nebraska corporation Ameritas. Primarily, Wells Fargo maintains that Ameritas' handling of the death benefit claim, and more to the point, its decision to file this suit to declare the Policy void prior to notifying Wells Fargo of the claim determination, constitute a strategic decision to avoid unfavorable Nebraska law and amount to bad faith conduct. Initially it argues, as to timing, the sequence of events is clear: Ameritas filed this declaratory judgment action on February 9, 2021, before communicating the claim determination to Wells Fargo. Wells Fargo

8

additionally notes that the post-filing February 10 letter did not, in fact, even deny the claim but rather indicated Ameritas' intent to deny. It contends Ameritas prematurely jumped into court in an effort to prevent Wells Fargo, the aggrieved party, from pursuing its own suit challenging the claim determination in the forum of its choice. Concerning the two fora's connection to this controversy, Wells Fargo also argues that Nebraska's nexus to the dispute is stronger than New Jersey's, further militating in favor of deference to the Nebraska Action. It points to the fact that Nebraska is the home state of Ameritas and asserts it is the place where Ameritas allegedly engaged in wrongful conduct in violation of Nebraska statutes governing claims settlement practices. Indeed, Wells Fargo contends that Ameritas' effort to avoid an anticipated lawsuit in a potentially unfavorable forum motivated its preemptive declaratory judgment suit.

Ameritas, in opposition, argues this case presents no compelling circumstances to justify a departure from the first-filed rule. It disputes Wells Fargo's accusations of bad faith and insists this suit was filed here in New Jersey, and promptly upon its discovery of improper STOLI conduct related to the Policy, for a determination regarding the enforceability of the Policy in the place with the greatest connection to that question. Ameritas maintains it "filed suit in New Jersey as the [Policy's] choice of law provision requires the use of New Jersey law; New Jersey is the state where the Application was signed; New Jersey is the state where the Policy was issued and delivered; and New Jersey is the state where the insuring [sic] life is a citizen." (Opp'n at 6.) Ameritas states that a determination regarding whether the Policy exists, or as it has alleged, is void from the outset, is a threshold issue which must be decided before addressing the claims asserted by Wells Fargo in the Nebraska Action. Thus, according to Ameritas, it is logical for this action to proceed before the parallel action may go forward.

The Court has reviewed the record and concludes that the facts present compelling circumstances justifying an exception the first-filed rule, in deference to the second-filed but largely duplicative Nebraska Action. In the Nebraska Action, Policy owner Wells Fargo has sued Ameritas to recover the death benefit under the Policy, asserting claims of breach of contract, unjust enrichment and promissory estoppel. Here, Ameritas seeks a declaration that the Policy is void. Thus, this motion concerns the interplay between a first-filed declaratory judgment action and later-filed action for affirmative relief, both concerning the same parties and their respective rights and obligations, if any, under the Policy. While such a posture, alone, does not necessarily dictate that this action must give way to the "coercive" Nebraska Action, the conduct of Ameritas in filing this action is a factor that tips the scale in favor of deferring to the Nebraska Action. Indeed, in their totality, the facts before the Court provide sufficient support for application of the well-recognized exception to the first-filed rule for anticipatory lawsuits.

In opposing this motion, Ameritas offers no plausible explanation for the sequence of events, in which it initiated this lawsuit before responding to the death benefit claim submitted by Wells Fargo. It took no action on the claim—either to pay it or deny it—for six months, purportedly while it investigated the circumstances surrounding the origin of the Policy. Ameritas asserts that the claim investigation it launched on or about August 17, 2020, revealed that the Policy was "likely procured as part of a STOLI scheme" and thus a nullity under New Jersey law, suggesting this action for recission was filed at the earliest practicable time to settle the question of the Policy's enforceability and not in anticipation of Wells Fargo's litigation to enforce the Policy. (Opp'n at 14.) This assertion concerning facts developed about the Policy in the period after the death benefit claim was submitted is not only unsupported by any individual with firsthand knowledge of the investigation and/or the claims handling process, but it also fails

10

to square with the involvement of Union Central, Ameritas's predecessor in interest with respect to the Policy, in the Binday Criminal Action. The Court acknowledges that it was not until 2019 that the case characterized by Ameritas as the "watershed" STOLI decision in New Jersey, *Sun Life Assurance Company of Canada v. Wells Fargo Bank, N.A.*, held that STOLI policies violate public policy and are therefore void *ab initio*. *See* 238 N.J. 157, 160 (2019). It further acknowledges that this holding was codified by the New Jersey Legislature in October 2020. *See* N.J.S.A. § 17B:30B-18. However, the timeline offered by Ameritas fails to explain how filing this lawsuit the day before advising the Policy owner of its claims determination comports with basic notions of fairness. Even assuming the truth of its belated discovery of facts indicating the Policy originated as a STOLI transaction, Ameritas does not dispel the strong inference of inequitable conduct.

Having found it appropriate to depart from the first-filed rule, the Court further concludes, for similar reasons, that equitable considerations favor a stay of this action. In this District, courts typically weigh four factors to determine whether a stay is warranted: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of a stay would create a clear hardship or inequity for the moving party; (3) whether a stay would simplify the issues and trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F.Supp.3d 440 446 (D.N.J. 2014) (internal citations and quotations omitted). The non-moving party here, Ameritas, will not be prejudiced by a stay of this action while the Nebraska Action proceeds.

The Nebraska Action will provide the parties an opportunity to litigate all aspects of this controversy. If it has not yet already done so, Ameritas will have the opportunity in the Nebraska Action to assert a counterclaim against Wells Fargo to declare the Policy void and obtain an

11

order of recission that will put it in exactly the same posture as it would hold if this case proceeded. Although Ameritas has argued the question of whether the Policy even exists requires application of New Jersey law, it points to no controlling authority requiring this controversy to be decided in a New Jersey forum. Moreover, the Court notes that far from being at a disadvantage in Nebraska, Ameritas would be litigating in its home state.

For the reasons previously discussed, the Court finds that denial of the stay sought by Wells Fargo would impose a hardship on it, in forcing it to proceed with this first-filed case. As to the third factor, it is quite likely if not certain that the proceedings in the Nebraska Action will obviate the need to litigate the claims involving the Policy raised in this action. The fourth factor is neutral, as the parties have engaged in some discovery and motion practice, but the case is not in an advanced stage of development. Thus, on balance, the Court finds that a stay of this action pending resolution of the Nebraska Action is appropriate.

### III.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds the parties' relative hardships and the circumstances of this action's filing favor a departure from the first-filed rule and warrant a stay of this action pending resolution of the Nebraska Action. Accordingly,

**IT IS** on this 16th day of June 2022,

**ORDERED** that Wells Fargo's motion to stay [ECF 29] is granted; and it is further

**ORDERED** that, in the Court's discretion and pursuant to its inherent authority to manage the docket, this action is **STAYED** pending judgment in the Nebraska Action, as identified in the foregoing Opinion; and it is further

**ORDERED** that, for purposes of docket management only, this case is administratively terminated for the duration of the stay; and it is further

**ORDERED** that within seven days of entry of judgment in the Nebraska Action, the parties shall file a joint letter advising this Court of the decision and, if necessary, requesting that this action be restored to the active calendar.

    /s/ *André M. Espinosa*
ANDRÉ M. ESPINOSA
United States Magistrate Judge